CC-98-162                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| General Accident Insurance Company Puerto Rico, Ltd.<br>    Demandante<br><br>            V.<br><br>Erwin Ramos Díaz<br>    Demandado y Tercero<br>    Demandante Recurrido<br><br>Myrna Quiñones López, etc.<br>    Terceros Demandados Recurrentes | Certiorari<br><br>99 TSPR 91 |

Número del Caso: CC-1998-0162

Abogado de Myrna Quiñones López:    Lcdo. Luis R. Lugo Emmanuelli

Abogado de Erwin Ramos Díaz:        Lcdo. Evaristo Maldonado Rodríguez

Abogado de General Accident
Insurance Company:                  Lcdo. Héctor H. Pérez Villanueva

Tribunal de Instancia, Sala Municipal de Luquillo

Juez del Tribunal de Primera Instancia: Hon. Ismael Colón Pérez

Tribunal de Circuito de Apelaciones: Circuito Regional VII

Juez Ponente: Hon. Salas Soler

Fecha: 6/14/1999

Materia: Cobro de Dinero

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


General Accident Insurance
Company Puerto Rico, Ltd.
  Demandante

                vs.

Erwin Ramos Díaz                    CC-1998-162        Certiorari
    Demandado y Tercero
 Demandante Recurrido

                vs.

Myrna Quiñones López, Et Als.
 Terceros Demandados Recurrentes


Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 14 de junio de 1999.


Nos toca resolver si en un pleito por subrogación, existe solidaridad entre una aseguradora y su asegurado, que permita una demanda de tercero contra el asegurado, de parte del demandado por la aseguradora.


                        I

General Accident Insurance Company of Puerto Rico (en adelante, compañía aseguradora), expidió un contrato de seguro de automóvil, del tipo conocido como "double interest", a favor de Myrna Quiñones López, para cubrir su vehículo personal marca Nissan

modelo Pathfinder del año 1993.[1] A tenor con los términos de la póliza de seguro referida, estaban asegurados los daños al vehículo aludido ("colisión"). Dicha póliza no incluía seguro de responsabilidad pública, por lo que no se extendía a los daños causados por Quiñones López a terceros mientras condujera su vehículo.

El 27 de julio de 1995, mientras conducían sus respectivos vehículos en la Carretera Núm. 992 de Luquillo, Erwin Ramos Díaz y Myrna Quiñones López estuvieron involucrados en un accidente de tránsito. Posteriormente, Quiñones López le solicitó a su compañía aseguradora la indemnización correspondiente por los daños a su vehículo a causa del accidente referido. Con arreglo al contrato de seguro suscrito, la compañía aseguradora pagó a Quiñones López $2,873.81 por los daños referidos.

Al amparo del pago realizado y de la cláusula de subrogación que estaba pactada en el contrato de seguro con Quiñones López, el 11 de septiembre de 1995 la compañía aseguradora le informó por escrito a Ramos Díaz que, según la investigación que la compañía había realizado, Ramos Díaz era el responsable del accidente de tránsito en cuestión. Por ello, le reclamó el reembolso de la cantidad que la compañía había pagado por los daños al vehículo asegurado. Mediante carta del 26 de septiembre de 1995, Ramos Díaz contestó la

---

[1] Una póliza de "double interest"o interés doble se limita a responder por los daños ocasionados al vehículo del asegurado y a garantizar la acreencia de la institución financiera, y excluye la responsabilidad de éstos frente a tercero.

comunicación aludida, negó responsabilidad alguna, y aprovechó para reclamarle a la compañía aseguradora por los

daños de su propio automóvil, ascendentes a $3,108, y por las lesiones personales que él y su familia alegadamente sufrieron en el accidente en cuestión. El 29 de septiembre de 1995, la compañía aseguradora contestó la carta aludida de Ramos Díaz, y le informó específicamente que la póliza expedida a favor de Quiñones López no cubría el tipo de reclamación que Ramos Díaz le había formulado. La compañía aseguradora le aclaró que Quiñones López no tenía una póliza de responsabilidad pública con dicha compañía, por lo cual la aseguradora no podía atender su reclamación.

En vista de que no había recibido pago alguno, el 18 de junio de 1996 la compañía aseguradora, en subrogación de los derechos de su asegurada, presentó una demanda contra Ramos Díaz en cobro de dinero. Alegó que el accidente de tránsito que originó la demanda se debió a la culpa y negligencia de Ramos Díaz y que en virtud del pago realizado a Quiñones López y del contrato suscrito con ésta, la compañía aseguradora quedó subrogada en todos los derechos y acciones de la asegurada por los daños ocasionados a su vehículo. En consecuencia, la compañía aseguradora solicitó el reembolso de los $2,873.81 que le había pagado a la asegurada. También, reclamó los gastos por investigación, ajuste, costas y honorarios de abogado por una cantidad no menor de $500.

El 3 de julio de 1996, Ramos Díaz contestó la demanda y negó toda culpa o negligencia en el accidente en cuestión. Alegó que el accidente referido ocurrió por la negligencia única de Quiñones López. En esa misma fecha, casi diez (10)

meses después de que la compañía aseguradora le informara a Ramos Díaz que la póliza en controversia no se extendía a su reclamación, éste presentó una reconvención contra la compañía aseguradora para reclamar judicialmente el resarcimiento de los daños que Quiñones López alegadamente le había causado a su propio vehículo. Por su parte, la compañía aseguradora contestó la reconvención y opuso como defensas que la acción referida estaba prescrita; que no exponía hechos que justificaran la concesión de un remedio; y que se había omitido acumular a una parte indispensable.

Casi año y medio después de la fecha del accidente de tránsito en cuestión y dentro del pleito de subrogación, el 9 de diciembre de 1996, Ramos Díaz presentó una demanda contra tercero mediante la cual le reclamó a Quiñones López, a su esposo, Fulano de Tal, y a la sociedad legal de gananciales integrada por ambos y a la Aseguradora "X", los daños causados a su auto a raíz del accidente de tránsito ocurrido en julio de 1995. Oportunamente, la parte tercera demandada presentó una moción solicitando la desestimación de la demanda referida. Levantó como defensa que la acción en su contra estaba prescrita. Sostuvo en lo pertinente que la demanda original era una acción de subrogación y al no existir solidaridad entre la compañía aseguradora y la asegurada Quiñones López, el término para incoar alguna acción en su contra no se había interrumpido y en consecuencia, al momento de presentarse la demanda contra tercero en cuestión, ese término ya había transcurrido.

Sostuvo, además, que tampoco procedía la acción contra tercero debido a que no se le había traído al pleito para responderle al tercero demandante por lo que éste pudiera serle responsable al demandante original, o para que le respondiera a dicho demandante original exclusivamente. Por su parte, Ramos Díaz se opuso a la moción de desestimación. Sostuvo que la compañía aseguradora, al presentar la demanda vía subrogación contra un tercero, interrumpió el término prescriptivo que tenía ese tercero para reclamarle al asegurado.

Luego de celebrada una vista, mediante sentencia parcial, el Tribunal de Primera Instancia desestimó la demanda contra tercero aludida bajo el fundamento de que estaba prescrita. Dicho foro señaló en lo pertinente que:

> [a] pesar de que [el demandado] tituló la reclamación [como] demanda contra terceros, de las alegaciones contenidas en la misma se desprende claramente que de lo que se trata es de una acción clásica de daños y perjuicios contra los terceros demandados por los daños sufridos por el [t]ercero [d]emandante [demandado] en su vehículo...
>
> ...
>
> No hay controversia entre las partes en cuanto a que no procede una demanda contra tercero en el caso ante nos toda vez que de las alegaciones del [t]ercero demandante, tomadas en su acepción más amplia y favorable a éste, no se desprende que se reclamen daños a los terceros demandados para que le sean o puedan serle[s] responsable[s] al demandado por toda o parte de la reclamación del demandante o que sean o puedan serle[s] responsable exclusivamente al demandante de la reclamación.
>
> ...
>
> Toda vez que no existe solidaridad entre dichas partes [la compañía aseguradora y la

asegurada], es mandatorio concluir que la causa de acción del demandado reclamando los daños en su Demanda contra Tercero fue radicada fuera del término concedido por ley para ello; esto es, en exceso del término de 1 año de la ocurrencia del supuesto acto culposo y/o negligente de la [t]ercera [d]emandada.

Posteriormente el foro de instancia, mediante sentencia parcial enmendada *nunc pro tunc,* condenó al demandado al pago de $300 en concepto de honorarios de abogado. Oportunamente, Ramos Díaz solicitó la reconsideración de la sentencia referida, la que fue denegada.

Inconforme con el referido dictamen de instancia, Ramos Díaz apeló al Tribunal de Circuito de Apelaciones. Mediante sentencia del 9 de febrero de 1998, el foro apelativo revocó el dictamen emitido por el Tribunal de Primera Instancia. Concluyó que como a su juicio existía "un tipo de solidaridad" entre la aseguradora y el asegurado, "la presentación de la demanda en subrogación interrumpió la prescripción sobre toda acción relativa a tal accidente que pudiera ser esgrimida por cualquier parte en el pleito".

El 13 de marzo de 1998, Quiñones López recurrió ante nos. Sostuvo en lo pertinente que el foro apelativo había errado al determinar que procedía la demanda contra tercero presentada por Ramos Díaz contra la recurrente; al determinar que dicha demanda no estaba prescrita; y al determinar que existía solidaridad entre la compañía aseguradora y la asegurada por efecto de la subrogación. El 22 de mayo de 1998 le concedimos término al recurrido Ramos Díaz para que mostrara causa, si alguna tuviere, por la cual

no se debía expedir el auto solicitado y dictar sentencia para revocar la dictada por el Tribunal de Circuito de Apelaciones. El 29 de junio, compareció ante nos la compañía aseguradora demandante mediante una moción en apoyo a la expedición del auto de *certiorari*. Poco después, el 2 de julio de 1998, compareció el recurrido.  Con el beneficio de la comparecencia de todas las partes, procedemos a resolver, conforme a lo intimado en nuestra orden de mostrar causa.

## II

El eje central de la controversia ante nos es la relación jurídica que existía entre la compañía de seguros y su asegurada.  De ésta dependen tanto la cuestión de si procesalmente el recurrido Ramos Díaz podía incoar una demanda de tercero contra Quiñones López en el caso de autos, como la cuestión de si tal demanda estaba prescrita por no existir solidaridad entre Quiñones López y la compañía aseguradora.  Pasemos, pues, a configurar la naturaleza precisa de la relación jurídica aludida.

Conforme a principios y normas incuestionables de nuestro ordenamiento jurídico, la  relación entre una aseguradora y su asegurado es de naturaleza **contractual**, y se rige concretamente por lo pactado en el contrato de seguros, que es la ley entre las partes. Martínez Parez v. U.C.B., Op. Per Curiam de 11 de junio de 1997, 143 D.P.R. ___, 97 JTS 98; Quiñones López v. Manzano Pozas, Op. del Tribunal de 25 de junio de 1996, 141 D.P.R. ___, 96 JTS 95; García Curbelo

v. A.F.F., 127 D.P.R. 747, 760 (1991). Por eso hemos resuelto que una compañía de seguros no viene obligada a pagar una indemnización en exceso de la obligación contraída en el contrato de seguro. Clínica Dr. Perea v. Hernández Batalla, 85 D.P.R. 767 (1962). Por ello, en el Artículo 20.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2003, se dispone, en lo pertinente, que:

> "... La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza. . .Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato..."

Véase, además, Couch on Insurance 2d, Rev. ed., sec. 61.3 (1983).

En el caso de autos, no está en controversia que el contrato de seguro que estaba vigente al momento en que ocurrió el accidente de tránsito que aquí nos concierne, sólo aseguraba las pérdidas relativas al vehículo de Quiñones López. La póliza en cuestión no se extendía a los daños corporales ni a los daños a propiedad ajena causados por la asegurada. La responsabilidad de la compañía aseguradora, pues, estaba precisamente limitada.

Tampoco existe controversia alguna de que el contrato de seguro en cuestión incluía una cláusula de subrogación a favor de la compañía aseguradora. Como se sabe, la subrogación es la figura jurídica en virtud de la cual una compañía de seguros sustituye a su asegurado en el ejercicio de las acciones o derechos que éste tiene contra los causantes de un daño. El objetivo de este mecanismo de

sustitución legal es que la compañía aseguradora, en virtud

del contrato de seguro, pueda recuperar de esos terceros

causantes de un accidente, la cantidad que en concepto de

indemnización la aseguradora pagó a la parte asegurada para

cubrir los daños ocasionados por los terceros.  Lo señalamos

así en Aseg. Lloyd's London v. Cía. Des. Comercial, 126

D.P.R. 251, 267 (1990), al indicar que mediante una póliza de

seguro:

> se transfiere el riesgo a la aseguradora y surge
> una obligación por parte de ésta de responder por
> los daños económicos al asegurado de ocurrir el
> evento [previsto]. Al resarcir económicamente al
> asegurado, la compañía aseguradora se pone en la
> posición de éste con relación a todas las acciones
> y los remedios a los cuales tiene derecho. Ocurre
> lo que llamamos el derecho a la subrogación.

Reafirmando esta normativa, en Coop. Seguros Múltiples

de P.R. v. Lugo, Op. del 25 de mayo de 1994, 136 D.P.R.

(1994), 94 JTS 77, señalamos extensamente que:

> [l]a subrogación es el derecho del asegurador a
> situarse en la posición del asegurado para
> gestionar de terceras partes legalmente
> responsables al asegurado el recobro de una pérdida
> o daño pagado por el asegurador. ...un asegurador
> tiene el derecho de recobrar, por vía de
> subrogación, los daños que ha sido llamado a pagar
> a un asegurado bajo su póliza (la del asegurado).
> La subrogación de un asegurador ("indemnity
> insurer") surge por operación de ley cuando éste
> hace un pago al asegurado; esto es, el pago de una
> obligación por un asegurador ("surety")
> ordinariamente lo hace acreedor a lo subrogación de
> todos los derechos, remedios y "equities" del
> asegurado (obligee). ... La subrogación sustituye
> una persona en lugar del acreedor, a cuyos derechos
> en relación con la deuda aquélla accede, y le
> confiere todos los derechos, remedios y seguros. No
> confiere mayores derechos al que se subroga que los
> que tenía el asegurado. Se coloca en la misma
> posición, pues nadie puede adquirir vía subrogación

derechos que no tenía aquél cuyos derechos invoca
el asegurador.

Véase además, Couch on Insurance 2d (Rev. ed.) secs. 61:1-
61:4, 61:36 (1983).

Nuestro ordenamiento jurídico, pues, autoriza a una compañía aseguradora a subrogarse en los derechos y remedios de la persona asegurada. Mediante esta figura jurídica, la aseguradora se coloca en la misma posición del asegurado para invocar aquellos derechos que le fueron cedidos. C.N.A. Casualty de P.R. v. Torres Díaz, opinión del 11 de junio de 1996, 141 D.P.R. ___, 96 JTS 85; Couch, supra, sec. 61:61. El derecho de subrogación de la compañía aseguradora es un medio para recobrar el pago desembolsado por concepto de daños cubiertos por un contrato de seguro. Coop. Seguros Múltiples de P.R. v. Lugo, supra; Couch, supra, sec. 61:4.

Como puede observarse de lo anterior, cuando la aseguradora ejerce el derecho de subrogación, no representa al asegurado, sino que lo sustituye, **sólo para recobrar de terceros lo pagado por ella según los términos de la póliza**. El alcance de esta sustitución está claramente delimitado y se circunscribe a reclamar los derechos y remedios que tenía el asegurado frente al causante de los daños, relativos al pago que la compañía aseguradora le hizo al asegurado. Hasta ahí llega la sustitución aludida. **No hay identidad entre la aseguradora y el asegurado más allá de estos límites, por razón de la subrogación referida**.

III

Conforme a lo reseñado en el acápite anterior, en derecho es claro que en el caso de autos no procedía la demanda contra tercero que Ramos Díaz presentó contra Quiñones López, dentro de la acción de subrogación instada por la compañía aseguradora contra Ramos Díaz. Procesalmente, no estaba disponible la demanda contra tercero para los fines que la utilizó el recurrido, quien la presentó con el propósito específico de que Quiñones López le indemnizara por los daños alegadamente ocasionados por éste a su vehículo.

La Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula la presentación de una demanda contra tercero. Dispone en lo pertinente que:

> [e]n cualquier momento después de comenzado el pleito el demandado podrá, como demandante contra tercero, notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y (1) que le sea o pueda serle responsable al demandado por toda o parte de la reclamación del demandante; o (2) que sea o pueda serle responsable exclusivamente al demandante.

El propósito de esta regla "es establecer un mecanismo para facilitar la resolución pronta y económica de pleitos múltiples que puedan surgir de unos mismos hechos". Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 28 (1986); Colón v. Coop. de Seguros Múltiples de P.R., 111 D.P.R. 568, 571 (1981); 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, sec. 1442, a las págs. 289-91 (1990). Sin embargo, la demanda contra tercero, aunque debe

permitirse con liberalidad, "no puede utilizarse para combinar en una acción todas las controversias, por dispares que sean, que posean alguna relación común". Camaleglo v. Dorado Wings, Inc., supra, a la pág. 30; Colón v. Coop. de Seguros Múltiples de P.R., supra. Véase además, Wright, Miller & Kane, supra, a la pág. 295. La Regla 12.1, supra, "no crea, extiende o limita derechos sustantivos". Colón v. Coop. de Seguros Múltiples de P.R., supra, a la pág. 571. "Lo que hace es acelerar su dilucidación". Id. En virtud de la regla aludida, "la reclamación contra tercero sólo procede cuando la responsabilidad de [ese tercero] dependa en alguna forma del resultado de la acción principal o cuando el tercero le es secundaria o directamente responsable al demandante". Camaleglo v. Dorado Wings, Inc., supra, a la pág. 30.

En la demanda contra tercero ante nuestra consideración, el demandante contra tercero Ramos Díaz alegó que el accidente en controversia le produjo daños y que ocurrió por la sola culpa y negligencia del tercero demandado Quiñones López, por lo que le reclamó indemnización por los daños a su vehículo. Como puede observarse, el demandante contra tercero no reclamó de modo alguno que su tercero demandado le era responsable en todo o en parte por la reclamación contra él de la compañía aseguradora demandante, como requiere la Regla 12.1 antes citada. Tampoco reclamó que el tercero demandado era o podía serle responsable exclusivamente a la compañía demandante. No hizo ninguna de las reclamaciones

para las cuales la Regla 12.1 referida autoriza las demandas contra tercero. No las hizo porque nada así podía reclamar Ramos Díaz en dicha acción a Quiñones López. Como la acción principal era sólo una de subrogación, en la cual lo **único** que estaba en cuestión era si Ramos Díaz tenía que reembolsar a la compañía aseguradora o no, en nada podía Quiñones López serle responsable a Ramos Díaz por lo que a éste le había reclamado el demandante original; y en nada tampoco podía dicho tercero demandado serle exclusivamente responsable a tal demandante. Sencillamente, no importaba cuál fuese el resultado de la acción de subrogación, Quiñones López en ningún caso sería responsable a ninguna parte del reembolso en cuestión en dicha acción. Nótese que aun si Ramos Díaz lograba demostrar, en el pleito de subrogación en su contra, que él no había sido responsable de modo alguno del accidente de tránsito referido, ello sólo conllevaría la denegación en los méritos de la acción de la compañía aseguradora que ésta había instado únicamente para recobrar de Ramos Díaz lo que dicha compañía le había pagado a Quiñones López. El pleito de subrogación aludido terminaría en tal supuesto con la sola determinación judicial de que Ramos Díaz no tenía nada que reembolsar a la compañía aseguradora. Por la naturaleza propia de la acción de subrogación, pues, nada tendría que pagar Ramos Díaz, y por tanto, en nada respondería el tercero demandado. Por otro lado, si Ramos Díaz no lograba ser exitoso en su alegación de que él no era responsable del

accidente, evidentemente en nada tampoco respondería el tercero demandado.

En otras palabras, en el caso de autos **las reclamaciones de la demanda y de la demanda contra tercero no tenían un entronque común**. Eran dos reclamaciones jurídicamente distintas. La demanda original iba dirigida a obtener de Ramos Díaz el reembolso de lo que la compañía aseguradora le había indemnizado a Quiñones López por las pérdidas del automóvil de éste. Era una acción en cobro de dinero. En cambio, la reclamación medular de Ramos Díaz en su demanda contra tercero al amparo de la Regla 12.1 era una acción torticera sobre los daños que alegadamente Quiñones López le había ocasionado al vehículo de Ramos Díaz a raíz del accidente de tránsito ocurrido en julio de 1995. Es evidente, pues, que lejos de ser una demanda contra tercero, la reclamación de Ramos Díaz contra Quiñones López era realmente una acción separada y distinta de daños y perjuicios. La demanda contra tercero de Ramos Díaz, por tanto, no cumplía con los requisitos claros y específicos de la Regla 12.1. El foro de instancia denegó dicha demanda correctamente, por no ser permisible procesalmente; y el foro apelativo erró al resolver que era procedente.

IV

Tampoco procedía la acción en cuestión de Ramos Díaz contra Quiñones López, ya que estaba prescrita. No existía solidaridad entre Quiñones López y su compañía aseguradora de modo tal que la acción de subrogación de ésta contra Ramos Díaz, interrumpiese el término prescriptivo de un año que regía la acción civil de Ramos Díaz contra Quiñones López, conforme lo dispone el Artículo 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298.

Para que exista solidaridad entre una compañía aseguradora y el asegurado, ello debe surgir claramente del contrato de seguro. Dicha solidaridad debe haberse pactado expresamente; o al menos, debe surgir claramente del contenido del contrato que la relación entre las partes se constituyó con tal carácter. <u>Torrellas v. Sucn. Torrellas</u>, 57 D.P.R. 501 (1940). Así lo hemos resuelto al interpretar el Artículo 1090 del Código Civil, 31 L.P.R.A. sec. 3101, que dispone:

> "<u>La concurrencia de dos</u> o más acreedores o de dos o <u>más deudores en una sola obligación</u>, no implica que cada uno de aquellos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. **<u>Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria</u>**." 31 L.P.R.A. Sec. 3101 (Subrayado y énfasis nuestro).

A la luz de este Artículo, hemos señalado antes que la solidaridad es una excepción en el régimen de las obligaciones contractuales; y que una obligación no puede ser considerada solidaria a menos que ello se desprenda de

una manera clara y evidente del contrato.  Arroyo v. Hospital la Concepción, 130 D.P.R. 596, 601-602 (1992);  Pauneto v. Núñez, 115 D.P.R. 596 (1984);  Rosario v. Sandoval, 60 D.P.R. 411 (1942).

En el caso de autos, no existía pacto expreso de solidaridad.  Tampoco puede estimarse que tal solidaridad se desprendía claramente del contrato.  Si algo se desprendía de éste era precisamente **que no existía solidaridad** entre la compañía aseguradora y la asegurada respecto a daños a terceros.  Ello, porque el contrato de seguro en cuestión era de naturaleza muy limitada.  Sólo se extendía a los daños propios del vehículo de la asegurada.  No cubría los daños que la asegurada causara a la propiedad de otros ni ningún daño corporal causado por la asegurada.

Más aun, no puede deducirse la solidaridad en cuestión de la subrogación pactada entre la compañía aseguradora y asegurada.  Como señaláramos antes en esta opinión, la subrogación aludida es de alcances jurídicos precisos y limitados.  No crea una identidad jurídica entre la aseguradora y el asegurado que vaya más allá de hacer a la aseguradora acreedora de todos los derechos, remedios y "equities" del asegurado.  Coop. Seguros Múltiples de P.R. v. Lugo, supra.  La aseguradora sustituye al asegurado sólo en los derechos cedidos.  No lo sustituye de modo alguno respecto a obligaciones que caen fuera del ámbito de la subrogación, como serían las que reclamó Ramos Díaz en su tardía reclamación contra Quiñones López.  Como la compañía

aseguradora aquí no tenía responsabilidad alguna respecto a dicha reclamación, no podía resolverse que existía solidaridad entre dicha compañía y la asegurada respecto a ella, que surgiese de una subrogación que tampoco incluía la reclamación referida. Erró, pues, el foro apelativo al resolver que existía tal solidaridad, y por ende, al resolver a base de ello que el término prescriptivo de un año quedó interrumpido.

En el caso de autos, hubo inercia clara de parte de Ramos Díaz respecto a su reclamación contra Quiñones López. Desde la carta del 29 de septiembre de 1995 que la compañía aseguradora le envió a Ramos Díaz, éste conocía claramente que la póliza de seguro de Quiñones López no cubría su reclamación. Esperó hasta el 9 de diciembre de 1996, más de catorce meses después, para incoar su acción judicial respecto a tal reclamación. Cuando lo hizo, ya su acción—meritoria o no—estaba prescrita. Tal como hemos advertido anteriormente, un reclamante está impedido de ampararse en los actos de terceros para interrumpir la prescripción. Es el propio reclamante quien tiene que interpelar al supuesto deudor. Agosto v. Municipio de Río Grande, Op. del 20 de mayo de 1997, 143 D.P.R. ___, 97 JTS 69. Cuando Ramos Díaz lo hizo aquí, ya había transcurrido el término prescriptivo dispuesto por el Artículo 1868 del Código Civil, supra.

V

Por los fundamentos expuestos, se expedirá el auto de *certiorari* y se dictará sentencia para revocar la emitida por el Tribunal de Circuito de Apelaciones y para devolver el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí resuelto.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

General Accident Insurance
Company Puerto Rico, Ltd.
  Demandante

        vs.

Erwin Ramos Díaz                          CC-1998-162          Certiorari
   Demandado y Tercero
 Demandante Recurrido

        vs.

Myrna Quiñones López, Et Als.
 Terceros Demandados Recurrentes

SENTENCIA

San Juan, Puerto Rico, a 14 de junio de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se expide el auto de *certiorari* y se dicta sentencia revocando la emitida por el Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo