ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JORGE R. CASTRO REYES Y AIDZA SANTIAGO ROMAN, POR SI Y EN REPRESENTACION DE SU MADRE, JUANA M. SANTIAGO ROMAN (QEPD)<br><br>Parte Apelante<br><br>v.<br><br>HOSPITAL EL MAESTRO, et. als.<br><br>Parte Apelada | TA2026AP00083 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan, Sala (804)*<br><br>Caso núm.: SJ2023CV11632<br><br>Sobre: Impericia Médica |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2026.

El 22 de enero de 2026, Jorge R. Castro Reyes y Aidza Santiago Román (en conjunto, la parte apelante), en representación de su madre, la señora Juana M. Santiago Román presentó ante nos un recurso de *Apelación*, en el que solicitó que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1]

En el aludido dictamen, el foro primario desestimó, con perjuicio, la causa de acción instada por la parte apelante en contra de The Medical Protective Company (MedPro o la parte apelada), la compañía aseguradora del Hospital del Maestro, Inc., (Hospital el Maestro), porque estaba prescrita. A su vez, determinó que, no existía solidaridad entre MedPro y Hospital el Maestro.

---

[1] Entrada Núm. 122 del caso SJ2023CV11632 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia Parcial* apelada.

**I.**

El caso de epígrafe tiene su inicio el 18 de diciembre de 2023, cuando la parte apelante instó una *Demanda* sobre daños y perjuicios, particularmente, sobre impericia médica, con respecto a los daños sufridos por la señora Juana M. Santiago Román (la señora Santiago Román), el 10 de octubre de 2022.[2] En esa línea, la parte apelante alegó que, la señora Santiago Román acudió a la sala de emergencias del Hospital el Maestro tras confrontar problemas respiratorios. Ante ello, la parte apelante arguyó que, esta recibió un tratamiento médico deficiente, el cual resultó en el fallecimiento de la paciente. Consecuentemente, la parte apelante argumentó que, la parte apelada debía responder tras ser negligente en no brindar un tratamiento adecuado a la señora Santiago Román.

En la referida *Demanda* se incluyó como codemandados el Hospital el Maestro, al Dr. Roberto J. Serrano Vázquez y su aseguradora, Puerto Rico Medical Defense Insurance Company, al Dr. Bernie Rodríguez Malpica, y su aseguradora, SIMED. Además, fueron añadidos dos doctores adicionales y varias aseguradoras identificadas mediante designaciones ficticias, debido a que la parte apelante desconocía la identidad de estas, al momento de la presentación de la *Demanda*. No obstante, la parte apelante, resaltó la intención de enmendar la *Demanda* para incluirlos en el pleito bajo su verdadero nombre una vez adquiriera conocimiento de estas.

Así las cosas, el 12 de enero de 2024, la parte apelante radicó una *Primera Demanda Enmendada* en la que añadió como codemandados, a JD Medical Group, PSC y su aseguradora bajo designación ficticia.[3]

---

[2] Entrada Núm. 1 del caso SJ2023CV11632 en el SUMAC.
[3] Entrada Núm. 11 del caso SJ2023CV11632 en el SUMAC.

Tras diversos trámites procesales, el 15 de marzo de 2024, la parte apelante presentó una *Segunda Demanda Enmendada* con el propósito de sustituir la designación ficticia de la aseguradora del Hospital el Maestro.[4] Ello, tras advenir en conocimiento sobre el nombre de la aseguradora del Hospital el Maestro durante el descubrimiento de prueba. Así, la parte apelante, solicitó al TPI que incluyese en el pleito a MedPro, aseguradora de la parte apelada.

El 19 de marzo de 2024 se efectuó el *Diligenciamiento de Emplazamiento* a MedPro, según los requisitos dispuestos en el Artículo 3.280 (1) del *Código de Seguros de Puerto Rico*, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 328 (*Código de Seguros*).[5]

Posteriormente, el 21 de marzo de 2024 la aseguradora fue *Debidamente Notificada* del emplazamiento por la Oficina del Comisionado de Seguros de Puerto Rico.[6]

El 1 de abril de 2024, la parte apelada y el Hospital el Maestro instaron una *Contestación a la Segunda Demanda Enmendada*, en la que negaron en su mayoría las alegaciones contenidas en la *Demanda*.[7]

Durante el transcurso procesal del pleito, el 8 de octubre de 2025 MedPro presentó una *Moción de Desestimación por Prescripción* en la que solicitó la desestimación de la causa de acción presentada en su contra.[8] Arguyó que, la acción estaba prescrita toda vez que, no se había interrumpido oportunamente el término prescriptivo de un (1) año aplicable a las acciones por daños y perjuicios según lo establece nuestro ordenamiento jurídico.

En respuesta, el 23 de octubre de 2025, la parte apelante presentó una *Oposición a moción de desestimación por prescripción*

---

[4] Entrada Núm. 38 del caso SJ2023CV11632 en el SUMAC.
[5] Entrada Núm. 46 del caso SJ2023CV11632 en el SUMAC.
[6] Entrada Núm. 50 del caso SJ2023CV11632 en el SUMAC.
[7] Entrada Núm. 56 del caso SJ2023CV11632 en el SUMAC.
[8] Entrada Núm. 114 del caso SJ2023CV11632 en el SUMAC.

en la que adujo que, en junio de 2023 le cursó una reclamación extrajudicial al Hospital el Maestro.[9] Con ello, argumentó que, interrumpió el término prescriptivo de la causa de acción. Así pues, en la *Demanda* mencionó un nombre desconocido puesto que no tenía conocimiento acerca del nombre de la aseguradora del Hospital el Maestro. Sin embargo, ripostó que, la *Demanda* fue presentada dentro del término prescriptivo de un (1) año en virtud de que interrumpió el término prescriptivo tras cursar una reclamación extrajudicial. Empero, no fue hasta el descubrimiento de prueba que advino en conocimiento sobre la identidad de la aseguradora del Hospital el Maestro. Por tanto, solicitó que el foro primario no desestimara el pleito.

Evaluada ambas posturas, el 2 de diciembre de 2025, el TPI emitió una *Sentencia Parcial* en la que desestimó, con perjuicio, la reclamación presentada contra MedPro por entender que la acción en su contra estaba prescrita.[10] El foro primario determinó que, la aseguradora fue traída al pleito, tardíamente, cuando el 15 de mayo de 2024, la parte apelante radicó la *Segunda Demanda Enmendada.* El *foro a quo* agregó que, la única diligencia hecha por la parte apelante, para conocer la identidad de la aseguradora del Hospital el Maestro, fue presentar una carta de reclamación extrajudicial en junio de 2023, en la que interrogó la identidad de la aseguradora del Hospital el Maestro. El TPI determinó que, la carta de *Reclamación Extrajudicial* no interrumpió el término prescriptivo con respecto a MedPro, por no haber sido dirigida, ni notificada a esta. A su vez, resolvió que no existía una relación de solidaridad entre el Hospital el Maestro y MedPro que permitiera extender los efectos interruptivos de dicha reclamación. Por ende, resolvió que, la causa

---

[9] Entrada Núm. 116 del caso SJ2023CV11632 en el SUMAC.
[10] Entrada Núm. 122 del caso SJ2023CV11632 en el SUMAC.

de acción estaba prescrita, toda vez que, no se presentó dentro del término prescriptivo una *Demanda* en contra de MedPro.

Insatisfecha, el 16 de diciembre de 2025, la parte apelante presentó una *Moción de Reconsideración* en la que argumentó que el TPI no evaluó la póliza de seguro en favor del Hospital el Maestro.[11] Cónsono con ello, sostuvo que, la parte apelada no instó, durante el transcurso del pleito, dicha póliza para que el foro primario pudiera reconsiderar que existía responsabilidad solidaria entre el Hospital el Maestro y la parte apelada. A tenor con lo anterior, señalo que, el 1 de junio de 2023, por medio de su representación legal, cursó una carta de *Reclamación Extrajudicial* dirigida al Hospital el Maestro.[12] En dicha misiva, le notificó al Hospital el Maestro su intención de presentar una acción por impericia médica y solicitó que el hospital informara la identidad de su compañía aseguradora. A su vez, anejó un documento en el que surge que, el 9 de junio de 2023, la carta fue recibida por el Hospital el Maestro. Por tanto, indicó que, interrumpió el término prescriptivo y el TPI debía reconsiderar su dictamen.

El 23 de diciembre de 2025, el foro primario emitió una *Resolución* en la que declaró No Ha Lugar la referida *Moción de Reconsideración.*[13]

Inconforme, el 22 de enero de 2026, la parte apelante, compareció ante nos mediante recurso de *Apelación* en el que coligó los siguientes señalamientos de error:

> Primer error: Erró el TPI al concluir que *no existía solidaridad* legal entre el HEM y MedPro para efectos de la reclamación presentada.
>
> Segundo error: Erró el TPI al determinar que la *carta de reclamación extrajudicial* no interrumpió el término prescriptivo respecto a MedPro y al *desestimar* la acción en su contra por *prescripción.*
>
> Tercer error: Erró el TPI al concluir que la inclusión de MedPro en la *Segunda Demanda Enmendada* constituyó una

---

[11] Entrada Núm. 123 del caso SJ2023CV11632 en el SUMAC.
[12] Entrada Núm. 123, Anejo 2, del caso SJ2023CV11632 en el SUMAC.
[13] Entrada Núm. 126 del caso SJ2023CV11632 en el SUMAC.

acción nueva contra una parte distinta a las originalmente demandadas.

En cumplimiento con nuestra *Resolución,* el 20 de febrero de 2026, la parte apelada instó un *Alegato de la parte apelada.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

## II.

## A.

Una de las fuentes de las obligaciones surge cuando los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia, está obligado a reparar el daño causado. Código Civil de Puerto Rico, 31 LPRA § 5141. El Art. 1536 del Código Civil de Puerto Rico, *supra,* sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia consiste en "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *López v. Porrata Doria,* 169 DPR 135, 151 (2006); *Toro Aponte v. ELA,* 142 DPR 464, 473 (1997).

Para que prospere una acción de daños y perjuicios, el reclamante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465 (2022); *Pérez Hernández v. Lares Medical Center, Inc.,* 207 DPR 965, 976 (2021); *López v. Porrata Doria, supra,* pág. 150 (2006). La culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Mena Pamias v. Jiménez Meléndez,* 212 DPR 758, 768 (2023). Véase, además, *Pérez Hernández v. Lares*

*Medical Center, Inc., supra,* págs. 976–977; *López v. Porrata Doria, supra,* pág. 151; *Toro Aponte v. ELA,* 142 DPR 464, 473 (1997).

Ahora bien, entre el acto culposo y el daño sufrido debe existir un nexo causal adecuado. *Pérez Hernández v. Lares Medical Center, Inc., supra,* pág. 977. El nexo causal adecuado no es "causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". *Pérez Hernández v. Lares Medical Center, Inc., supra,* págs. 976-977.

Cabe resaltar que, los tribunales apelativos no intervendremos con la valorización de daños que realiza el foro primario, salvo cuando la cuantía sea muy baja o alta. *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016).

**B.**

La prescripción es una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado. Art. 1189 del Código Civil de 2020, 31 LPRA sec. 9481; *Rivera Ruiz v. Mun. De Ponce,* 196 DPR 410, 415 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 372–373 (2012). El término para ejercer las acciones se puede interrumpir ejerciendo la acción ante los tribunales, reclamación extrajudicial del acreedor y por cualquier reconocimiento de deuda por el deudor. *Rivera Ruiz v. Mun. De Ponce, supra,* pág. 415. El término prescriptivo dispuesto en el Art. 1190 del Código Civil de 2020, *supra* sec. 9482, establece que el término prescriptivo comienza a transcurrir desde que el "legitimado activo conoce o debe conocer la existencia del derecho a reclamar y la identidad de la persona contra quien puede actuar."

Ahora bien, una de las formas para interrumpir el término prescriptivo es la reclamación extrajudicial. Los requisitos para que se constituya una reclamación extrajudicial son los siguientes: (a) La reclamación debe ser oportuna, lo cual requiere que se realice antes de la consumación del plazo, (b) Es necesaria la legitimación

del reclamante. Ello requiere que la reclamación se haga por el titular del derecho o acción cuya prescripción quiere interrumpirse, (c) Se requiere idoneidad del medio utilizado para realizar la reclamación y (d) Por último, debe existir identidad entre el derecho reclamado y aquél afectado por la prescripción. *De León v. Caparra Center*, 147 DPR 797, 805 (1999).

Este Tribunal de Apelaciones ha resuelto en múltiples ocasiones que un correo electrónico y una carta puede constituir un método para efectuar una reclamación extrajudicial. *Aguakem Caribe, Inc. v. Baxter Healthcare Corporation of Puerto Rico*, KLAN0801989.

### C.

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, (Código de Seguros) es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. *Jiménez López et al v. SIMED*, 180 DPR 1 (2010). Tal negocio, está revestido de un alto interés público, por lo que ha sido regulado ampliamente por el Estado. *Molina v. Plaza Acuática*, 166 DPR 260, 266 (2005). El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. A cambio de una prima, se transfiere el riesgo de un evento especifico a la aseguradora, quien viene obligada a cubrir los daños económicos por los que el asegurado este llamado a responder. *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017). Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al asegurado de ciertos eventos identificados en el contrato de seguros. *Íd.*

En cuanto a la interpretación de las pólizas, el Código de Seguros establece que todo contrato de seguro deberá interpretarse

globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125. "Para que exista solidaridad entre una compañía aseguradora y el asegurado, ello debe surgir claramente del contrato de seguro. Dicha solidaridad debe haberse pactado expresamente; o al menos, debe surgir claramente del contenido del contrato que la relación entre las partes se constituyó con tal carácter." *Gen Accid. Ins. Co. P.R. v. Ramos*, 148 DPR 523, 537 (1999).

El Artículo 27.150 del Código de Seguros, *supra*, esboza el deber de todo asegurado a notificar cuando una reclamación es presentada al asegurador, quien, también viene obligado de acusar recibo dentro de quince (15) días, de ser notificado. Este requisito es esencial para el cumplimiento del debido proceso según dicta el estatuto que a continuación se expone:

> Todo asegurador, luego de notificársele una reclamación, deberá acusar recibo de la misma, dentro de los próximos quince **(15) días** de habérsele notificado la misma. La ***notificación hecha a una de las personas autorizadas por el asegurador***, para recibir reclamaciones en su nombre, se considerará como hecha a este último, siempre que la autorización o el acuerdo este vigente y no se haya revocado.
>
> Toda ***persona que no esté autorizada*** a recibir las mismas vendrá obligada a notificar, dentro de los siguientes siete **(7) días**, ese hecho al reclamante y deberá indicar a quién debe hacerse la notificación junto con la dirección de esta persona. La violación de este artículo podrá ser sancionado con una multa administrativa conforme se dispone en el Artículo 27.260 de este capítulo.

(26 LPRA sec. 2714a). (Énfasis nuestro).

Integrando lo anterior, cuando se trata de una acción de daños y perjuicios —particularmente instada por un tercero— el ordenamiento exige que se notifique por escrito tanto al Comisionado de Seguros como a la aseguradora sobre la alegada violación. A partir de dicha notificación, la aseguradora dispone de un término de sesenta (60) días para remediar la violación, 26 LPRA sec. 2716a (3). Además, dicha notificación tiene el efecto de

interrumpir por sesenta y cinco (65) días cualquier término prescriptivo aplicable para acudir a los tribunales, 26 LPRA sec. 2716a(3)(e).

En el caso de *Consejo de Titulares v. MAPFRE Ins. Comp.,* 208 DPR 1018, 1038-1039 (2022), resaltó como [E]l Tribunal Supremo de Florida realizó las siguientes expresiones, las cuales resultan particularmente persuasivas debido a que el texto legal que ese foro interpretó en esa ocasión es prácticamente idéntico al texto incluido en el Art. 27.164 de nuestro Código de Seguros, *supra*:

> [D]ebe reconocerse que lo que crea la sección 624.155 de los Estatutos de Florida (1993) es un 'recurso civil' estatutario. Para [el asegurado] no hay remedio sin el estatuto. De conformidad con el estatuto, no **hay remedio hasta que el asegurado envíe la notificación y la aseguradora tenga la oportunidad de "subsanar" la violación**. Si la aseguradora paga los daños durante el período de subsanación, entonces no hay remedio. Para que esto concuerde con la lógica y el sentido común, esto tiene que significar que los daños extracontractuales que pueden recuperarse únicamente en virtud de este estatuto de remedio civil no pueden recuperarse cuando la acción en sí no ha madurado si la aseguradora paga lo adeudado en la póliza de seguro durante el período de subsanación. **La causa de acción legal por daños extracontractuales simplemente nunca llega a existir hasta el vencimiento del período de sesenta [60] días sin el pago de los daños adeudados en virtud del contrato**. Entendemos que [,] al crear este remedio legal para acciones de mala fe, la Legislatura proporcionó esta ventana de sesenta [60] días como una última oportunidad para que las aseguradoras cumplan con sus obligaciones de manejo de reclamos cuando una decisión de buena fe por parte de la aseguradora indicaría que los beneficios contractuales se adeudan.

(Énfasis suplido y traducción nuestra).

### III.

En el presente recurso, la parte apelante alegó que el TPI erró al concluir que no existía solidaridad entre el Hospital el Maestro y su aseguradora, MedPro. Asimismo, argumentó que, la carta de reclamación extrajudicial interrumpió el término prescriptivo con respecto a dicha aseguradora, Además, adujo que, el foro primario erró en resolver que la inclusión de MedPro en la *Segunda Demanda Enmendada* constituyó una causa de acción nueva contra una parte distinta.

Por estar estrechamente relacionados los referidos señalamientos, procederemos a discutirlos en conjunto.

Tal como esbozamos en nuestra segunda parte, para que prospere que una parte sea indemnizada en virtud del Art. 1536 del Código Civil, *supra*, deben concurrir los siguientes elementos: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al., supra*; *Pérez Hernández v. Lares Medical Center, Inc., supra*, pág. 976; *López v. Porrata Doria, supra*, pág. 150. Las acciones de daños y perjuicios en nuestro ordenamiento están sujetas a que sean presentadas dentro del término prescriptivo de un (1) año. *Haedo Castro v. Roldán Morales*, 203 DPR 324 (2019); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 372–373 (2012). Dicho término comienza a transcurrir desde que el perjudicado conoce o debe conocer la existencia del daño y la identidad de la persona contra quien puede reclamar. Art. 1190 del Código Civil de 2020, 31 LPRA § 9482; *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410, 415 (2016). Asimismo, el término prescriptivo puede interrumpirse, entre otros mecanismos, mediante una reclamación extrajudicial válida, siempre que cumpla con los requisitos de oportunidad, legitimación, idoneidad e identidad entre lo reclamado y la acción posteriormente ejercitada. *De León v. Caparra Center*, 147 DPR 797, 805 (1999).

Luego de un análisis cuidadoso del expediente ante nos, resolvemos que el TPI no incidió en los señalamientos de error formulados por la parte apelante.

Surge del expediente que, la parte apelante cursó una carta de reclamación extrajudicial al Hospital el Maestro el **1 de junio de 2023**, la cual fue recibida el **9 de junio de 2023**. No obstante, dicha comunicación estuvo dirigida exclusivamente al Hospital el Maestro y no fue dirigida ni se le notificó a la aseguradora, MedPro sobre

dicha reclamación. Así las cosas, al momento de incoar la *Demanda* original, la parte apelante desconocía la identidad de la aseguradora, por lo que la comunicación no contenía una reclamación específica en su contra.

A tenor con la normativa aplicable, la reclamación extrajudicial debe guardar identidad con el sujeto contra quien se pretende interrumpir la prescripción. *De León v. Caparra Center*, *supra*. Como consecuencia, una reclamación dirigida únicamente al asegurado no surte efectos interruptivos respecto a la aseguradora cuando esta no ha sido notificada ni identificada en la reclamación extrajudicial. Así pues, concurrimos con el foro primario en que la carta enviada al Hospital el Maestro no tuvo el efecto de interrumpir el término prescriptivo en cuanto a MedPro.

De igual forma, el esquema del Código de Seguros de Puerto Rico refuerza la conclusión anterior. El contrato de seguro constituye un acuerdo independiente mediante el cual el asegurador asume el riesgo del asegurado a cambio de una prima. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102; *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017). Además, el ordenamiento requiere notificación directa a la aseguradora y al Comisionado de Seguros para activar sus obligaciones procesales y sustantivas. Art. 27.150 del Código de Seguros, 26 LPRA sec. 2714a. En ausencia de este diligenciamiento, se comprende que la aseguradora no fue debidamente notificada acerca de la reclamación extrajudicial cursada por la parte apelante. Atisbamos que, la *Segunda Demanda Enmendada* no constituyó una nueva causa de acción. Lo cierto es que, ya había transcurrido el término prescriptivo de un (1) año en virtud de que en la carta extrajudicial no interrumpió el término prescriptivo en cuanto a MedPro. Ello pues, dicha carta no fue cursada hacia la aseguradora y, por tanto, no interrumpió el término prescriptivo con respecto a la aseguradora al amparo del Art. 1189

del Código Civil de 2020, 31 LPRA sec. 9481 y los requisitos jurisprudenciales para que se configure una reclamación extrajudicial.

Por otro lado, la parte apelante sostiene que existía una relación de solidaridad entre el Hospital el Maestro y su aseguradora que permitía extender los efectos interruptivos de la reclamación extrajudicial. Sin embargo, es principio firmemente establecido que la solidaridad no se presume, sino que debe surgir de forma expresa. *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra.* Examinada la póliza de seguro, colegimos que esta no posee una cláusula expresa que contenga un lenguaje afirmativo e inequívoco que establezca una obligación solidaria entre esta y el Hospital el Maestro.

A la luz de todo lo anterior, concluimos que el TPI no erró al determinar que la acción contra MedPro estaba prescrita, ni al desestimar, con perjuicio, la reclamación presentada en su contra.

**IV.**

A luz de los fundamentos que anteceden, confirmamos la *Sentencia Parcial* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones